1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          FOR THE DISTRICT OF IDAHO

10

11   MEGAN FENTON,                         Case No.: 1:19-cv-00447-MCE

12              Plaintiff,

13        v.                               **MEMORANDUM AND ORDER**

14   FRUITLAND SCHOOL DISTRICT NO.
     373, et al.,
15
                Defendants.
16

17

18          Presently before the Court are numerous motions filed by the parties including a

19   motion to compel, motions to seal, motions to strike, motions in limine, and a motion to

20   strike an expert report.  Dkt. 25, 27, 30, 32, 33, 34, 37.  These matters have been fully

21   briefed.  Having reviewed and considered the parties' records and briefs, the Court finds

22   that oral argument is unnecessary to resolve the pending motions.  For the reasons set

23   forth below, the motion to compel is GRANTED in part and DENIED in part, the motions

24   to seal are GRANTED, and the remaining motions are DENIED.

25   ///

26   ///

27   ///

28   ///

1

1
2

## BACKGROUND[1]

3

On November 19, 2019, Plaintiff Megan Fenton ("Plaintiff") initiated the present

action in this Court against Defendants Fruitland School District No. 373 ("FSD"),

Fruitland School District No. 373 Board of Trustees (the "Board"), and FSD

Superintendent Teresa Fabricius ("Fabricius") (collectively, "Defendants").  According to

the Complaint, while she was employed at Fruitland High School, Plaintiff alleges that

she was sexually harassed and assaulted by former principal Michael Ray Fitch ("Fitch"),

and that Defendants failed to investigate or take any steps to protect her and other

students and staff.[2]  See Compl., Dkt. 1 ¶¶ 9–41.  Plaintiff asserts the following causes

of action:  (1) Gender Discrimination and Sexual Harassment in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq. ("Title VII"), against FSD and

the Board; (2) Retaliation in violation of Title VII against Defendants; (3) Gender

Discrimination, Sexual Harassment, and Sexually Hostile Culture in violation of Title IX of

the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), against

Defendants; (4) Retaliation in violation of Title IX against Defendants; (5) violation of the

Idaho Protection of Public Employees Act against Defendants; (6) Intentional Infliction of

Emotional Distress against Defendants; (7) Negligent Infliction of Emotional Distress

against Defendants; and (8) Civil Rights Claim pursuant to the Eighth and Fourteenth

Amendments to the United States Constitution and 42 U.S.C. § 1983 against

Defendants.[3]  See id. at 10–20.

Defendants filed an Answer to the Complaint on February 21, 2020.  See Dkt. 5.

Although Defendants did not list an affirmative defense based on advice of counsel, the

---

[1] The Court will only recount the procedural history here but will discuss the factual context applicable to each issue in more detail below.

[2] At the time of the alleged events, Defendants were represented by MSBT Law ("MSBT").  In this litigation, Defendants are represented by Anderson, Julian, & Hull, LLP ("AJH").

[3] Fitch was previously named a defendant in this action, but he was dismissed with prejudice pursuant to stipulation on December 19, 2022.  See Dkt. 43, 44.  Accordingly, the civil battery and civil assault claims, which were asserted against Fitch only, are no longer active causes of action.

Answer provides the following references to speaking with counsel:  (1) when "rumors about Fitch were communicated to [her] in 2018 . . . Fabricius consulted with [FSD]'s attorney and was advised that no investigation could be initiated merely on hearsay rumors"; and (2) when Plaintiff filed a harassment complaint on December 18, 2018, FSD, "with the advice of its attorney, determined that it would open a separate investigation related only to Plaintiff's allegations, resulting in two on-going investigations."  See id. ¶¶ 10, 26, 32.[4]

On May 8, 2020, Plaintiff propounded her First Set of Interrogatories, Requests for Admission, and Requests for Production of Documents to Defendants.  See Ex. B, Stoll Decl., Dkt. 26-3.  The Court's Scheduling Order was issued on June 12, 2020, which provided that "[a]ll factual discovery will be completed by June 30, 2021."  Dkt. 13, at 3 (emphases removed).

On June 25, 2020, Defendants produced, in part, a collection of Fabricius' handwritten notes with some redactions based on attorney-client privilege.  See Ex. C, Casperson Decl., Dkt. 25-4.  That same day, Defendants also "produced some attorney-client emails, most of which were related to the two investigations of Fitch initiated in November and December 2018 . . ."  Pl.'s Mot. Compel, Dkt. 25, at 5.

Defendants produced additional handwritten notes by Fabricius with redactions based on attorney-client privilege on February 5, 2021.  See Ex. C, Casperson Decl., Dkt. 25-4.  On April 14, 2021, the Court granted the parties' stipulation to extend the deadline for the completion of discovery to September 30, 2021.  Dkt. 17, at 1.  Shortly before Fabricius' deposition, on May 6, 2021, Defendants produced unredacted versions of Fabricius' handwritten notes and unredacted attorney-client communications with AJH, MSBT, and Idaho Counties Risk Management Program ("ICRMP").  See Exs. C & G, Casperson Decl., Dkt. 25-4, 25-8.  Fabricius was deposed on May 14, 2021, in which she testified, in part, that (1) attorney Jill Holinka of MSBT advised her she "could not

---

[4] Because FSD had independently received information indicating that Plaintiff had previously been interviewed during the course of a law enforcement investigation into Fitch's conduct, it had already opened its own investigation, which is why two investigations thereafter proceeded simultaneously.

1    begin an investigation based on rumors"; (2) she talked to attorney Brian Julian of AJH at

2    a law conference "to double check that there wasn't anything [she] should be doing

3    based on rumors"; (3) she did not place Fitch on administrative leave on October 19,

4    2018, because she was advised that Defendants had to wait for a written report; and

5    (4) she is "in the habit of following legal advice from [Defendants'] attorney."  <u>See</u> Ex. D,

6    <u>id.</u>, Dkt. 25-5, at 37, 39, 41, 51–52.

7        On August 16, 2021, the Court granted the parties' second stipulation to extend

8    the discovery deadline, this time to December 29, 2021.  Dkt. 20, at 1–2.  A couple

9    weeks later, on August 31, 2021, Defendants produced clips of recordings attorney

10    James Stoll of AJH made of interviews with three witnesses, but they did not produce the

11    full recordings until September 10, 2021.  Casperson Decl., Dkt. 25-1 ¶ 20.  On

12    September 30 and November 19, 2021, Defendants produced additional unredacted

13    attorney-client communications with AJH, MSBT, and ICRMP.  <u>See</u> Ex. G, <u>id.</u>, Dkt. 25-8.

14    Plaintiff subpoenaed information from MSBT and attorney Holinka to obtain waived

15    communications, and in December 2021, MSBT responded by producing emails, billing

16    records, and attorney Holinka's notes.  <u>See</u> Casperson Decl., Dkt. 25-1 ¶¶ 16–18; Ex. K,

17    <u>id.</u>, Dkt. 25-12 (letter dated November 29, 2021, from attorney Holinka stating that she

18    no longer works for MSBT).  Additionally, Plaintiff served a subpoena on attorney Elaine

19    Eberharter-Maki, who FSD retained to investigate the allegations related to Fitch in

20    October and November 2018, for documents associated with those investigations, and

21    attorney Eberharter-Maki timely responded with documentation.  <u>See</u> Exs. Y & Z, <u>id.</u>,

22    Dkt. 25-26, 25-27.

23        On December 10, 2021, Defendants finally produced all of Fabricius' unredacted

24    handwritten notes as well as more unredacted attorney-client communications with AJH,

25    MSBT, and ICRMP.  Pl.'s Mot. Compel, Dkt. 25, at 4; <u>see</u> Ex. G, Casperson Decl., Dkt.

26    25-8.  Defendants also produced additional recordings of attorney Stoll's interviews with

27    other witnesses on December 29, 2021, and January 27, 2021.  Casperson Decl., Dkt.

28    25-1 ¶ 21.

On February 11, 2022, Plaintiff sent Defendants a meet and confer letter regarding numerous discovery concerns. See Ex. A, id., Dkt. 25-2. Shortly thereafter, on February 16, 2022, Defendants produced Fabricius' email communications with MSBT. Casperson Decl., Dkt. 25-1 ¶ 15. On March 22, 2022, Plaintiff's counsel went to defense counsel's office to examine Fabricius' original handwritten notes. See Perdue Decl., Dkt. 25-28 ¶ 2. According to Plaintiff's counsel,

> the notes created by Ms. Fabricius were made for the purposes of her legal defense and the legal defense of [FSD]. For example, the notes are categorized by different topic, numbered by Fabricius in the top right-hand corner, and refer to emails that are also included in her notes. The handwriting on the notes on multiple date entries is the same, the spacing is even, and the ink is the same color. All suggesting that these notes were not taken as the events occurred but re-written to aid Defense Counsel in the defense of the case. Additionally, many of the notes are stapled or compiled by topic.
>
> [Plaintiff's counsel] requested that James Stoll, one of Defendants' legal counsel, provide color copies of all notes as the ink colors and handwriting give necessary context from the notes. Seeing the notes in color also made it clear that the many, if not all, of the notes were created for the purpose of defense of Ms. Fabricius and FSD. For example, in a note allegedly dated August 15, 2019, Ms. Fabricius numbers the note pages 1–4 in the top right hand corner, and describes a meeting she had with [Plaintiff]. In the same notes, Ms. Fabricius goes on to outline details that would aid in the defense of herself and FSD. In those notes, Ms. Fabricius also created a heading labeled: "Points regarding complaint." She then goes on to list "Witnesses regarding discrimination and retaliation."

Id. ¶¶ 3–4.[5] Following this inspection, Plaintiff's counsel requested that Defendants provide color copies of Fabricius' notes and "confirm that there are no other original notes possessed by FSD that have not yet been produced by Ms. Fabricius or FSD." Id. ¶ 5. According to Plaintiff, Defendants did not provide the requested copies. Id. The parties subsequently filed the present motions.

---

[5] In their opposition to the Motion to Compel, Defendants claim that, "[p]rior to the deadline for Discovery, Plaintiff did not make any formal request to have Ms. Fabricius' notes produced in color, despite some being produced in color on June 25, 2020 . . ." Defs.' Response Mot. Compel, Dkt. 26, at 2 n.1. Regardless, defense counsel asserts that "it is unclear . . . why some notes were produced in color, while others in black and white," but that perhaps "it was a result of how the office assistant scanned the documents at the time of receipt." Id. ("There was never a decision to purposefully disclose some of the notes in color and the rest in black and white.").

1

**ANALYSIS**

2

3       A.      **Plaintiff's Motion to Compel Defendants' Waived Attorney-Client
                Communications and Work Product**[6]

4

5       Discovery is permitted "regarding any nonprivileged matter that is relevant to any

6   party's claim or defense and proportional to the needs of the case . . ."  Fed. R. Civ. P.

7   26(b)(1).  Relevant information "need not be admissible in evidence to be discoverable."

8   Id.  A party may move for an order compelling a discovery response pursuant to Federal

9   Rule of Civil Procedure 37(a)(3)(B).[7]  Under Rule 37, a party may move to compel

10  discovery responses if, among other things, an opposing party fails to answer

11  interrogatories or produce requested documents.  Id. 37(a)(3)(B)(iii)–(iv).  "While the

12  moving party must make a threshold showing of relevance, . . . the party resisting

13  discovery carries the 'heavy burden' of showing specifically why the discovery request is

14  irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise

15  improper."  Strojnik v. Block 22 LLC, No. 1:18-cv-00556-BLW, 2019 WL 6315523, at *2

16  (D. Idaho Nov. 25, 2019) (citations omitted).

17      "Under Federal Rule of Evidence 501, federal common law generally governs

18  claims of privilege."  Wilcox v. Arpaio, 753 F.3d 872, 876 (9th Cir. 2014).  "But in a civil

19  case, state law governs privilege regarding a claim or defense for which state law

20  supplies the rule of decision."  Fed. R. Evid. 501.  Here, Plaintiff alleges both federal and

21  ///

22

23          [6] Defendants request that the Court seal Exhibit L to the Declaration of attorney Stoll in support of
    Defendants' Response to Plaintiff's Motion to Compel on grounds that it "contains the date of birth and
24  social security number of the Plaintiff."  Defs.' Mot. Seal, Dkt. 27, at 2; see Ex. L, Stoll Decl., Dkt. 26-47
    (Plaintiff's Objections, Answers and Responses to Defendants' First Set of Interrogatories and Requests
25  for Production).  Plaintiff does not oppose this request.  Additionally, Plaintiff requests that the Court file
    Exhibit 4 to the Declaration of attorney Casperson in support of Plaintiff's Reply to the Motion to Compel
26  under seal "based upon Defendants' categorization of the document as 'Confidential Subject to Protective
    Order.'"  Pl.'s Mot. Seal, Dkt. 30, at 2.  Defendants do not oppose this request.  In light of the parties' non-
27  oppositions, the Court GRANTS both Motions to Seal.

28          [7] Unless otherwise noted, all further references to "Rule" or "Rules" are to the Federal Rules of
    Civil Procedure.

1    state law claims in her Complaint.  Where "the same evidence relates to both federal and

2    state law claims, . . . federal privilege law governs."  Wilcox, 753 F.3d at 876.

3          "Under the attorney-client privilege, confidential communications made by a client

4    to an attorney to obtain legal services are protected from disclosure."  Clarke v. Am.

5    Com. Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).  "Because the attorney-client

6    privilege has the effect of withholding relevant information from the factfinder, it is

7    applied only when necessary to achieve its limited purpose of encouraging full and frank

8    disclosure by the client to his or her attorney."  Id.  "The attorney-client privilege applies

9    when (1) legal advice is sought by the client (2) from a professional legal advisor in his

10   capacity as such, and (3) the communications relating to that purpose (4) are made in

11   confidence (5) by or to the client."  Goodrick v. Sandy, No. 1:10-cv-00603-EJL, 2013 WL

12   1729108, at *8 (D. Idaho Apr. 22, 2013) (citing Admiral Ins. Co. v. United States Dist. Ct.

13   for Dist. of Ariz., 881 F.2d 1486, 1492 (9th Cir. 1989)).

14         On the other hand, the work product doctrine, codified in Rule 26(b)(3), protects

15   from discovery "documents and tangible things that are prepared in anticipation of

16   litigation or for trial by or for another party or its representative . . ."  Fed. R. Civ. P.

17   26(b)(3)(A).  However, "subject to Rule 26(b)(4), those materials may be discovered if:

18   (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it

19   has substantial need for the materials to prepare its case and cannot, without undue

20   hardship, obtain their substantial equivalent by other means."  Id.  "Generally, the party

21   seeking to withhold documents from discovery on the basis of attorney-client privilege

22   and work product has the burden of proving that those doctrines apply to the documents

23   in question."  W. Mortg. & Realty Co. v. KeyBank Nat'l Ass'n, No. 1:13-cv-00216-EJL-

24   REB, 2015 WL 13841480, at *3 (D. Idaho Apr. 15, 2015).  With these principles in mind,

25   the Court will examine each of Plaintiff's requests in turn.

26              **1.    Advice of Counsel Defenses**

27         "There are numerous [] courts holding that the assertion of the advice of counsel

28   as a substantive defense renders the attorney-client privilege waived."  In re Fresh and

7

Process Potatoes Antitrust Litig., No. 4:10-md-02186-BLW-CWD, 2014 WL 1413676, at *6 (D. Idaho Apr. 11, 2014) (collecting cases).  "The privilege which protects attorney-client communications may not be used both as a sword and a shield."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted).  In other words, "parties should not be able to selectively disclose privileged communications they consider helpful while claiming privilege on damaging communications relating to the same subject."  Aspex Eyeware, Inc. v. E'Lite Optik, Inc., 276 F. Supp. 2d 1084, 1093 (D. Nev. 2003).  Although "a work product waiver is not automatic in cases involving a reliance on counsel defense . . . many courts do find that waiver of the work product doctrine is proper under the same fairness considerations that govern waiver of attorney-client privilege."  In re Broadcam Corp. Sec. Litig., No. SACV 01275GLTMLGX, 2005 WL 1403513, at *3 (C.D. Cal. Apr. 7, 2005); see also United Specialty Ins. Co. v. Dorn Homes Inc., 334 F.R.D. 542, 545–46 (D. Ariz. Jan. 28, 2020) (collecting cases).

According to Defendants, they are claiming an advice of counsel defense regarding (1) "Defendants' decision not to investigate Fitch when misconduct was reported," and (2) "Defendants' decision not to investigate Fitch after learning [Idaho State Police ('ISP')] was investigating him for sexual misconduct."[8, 9]  Defs.' Response Mot. Compel, Dkt. 26, at 18 (quoting Pl.'s Mot. Compel, Dkt. 25, at 11).  Accordingly, Plaintiff argues that "Defendants should be required to produce all attorney-client communications and work product doctrine information related to each of [their] affirmative defenses based on advice of counsel."  Pl.'s Mot. Compel, Dkt. 25, at 12.

In opposition, Defendants primarily argue that Plaintiff never served them with requests for the information she now seeks.  See Defs.' Response Mot. Compel, Dkt. 26, at 3, 10, 11, 13, 17–19.  Such an argument, however, would be more persuasive had

_____

[8] Defendants state they are not asserting an advice-of-counsel defense regarding their decision to move Plaintiff's desk into the computer lab.  See Defs.' Response Mot. Compel, Dkt. 26, at 10, 18.

[9] According to Plaintiff, the advice of counsel defense based on Defendants' decision not to investigate Fitch after learning of the ISP investigation "was not identified until Defendants submitted their position paper to the Court on February 22, 2022."  Pl.'s Mot. Compel, Dkt. 25, at 11; see Ex. X, Casperson Decl., Dkt. 25-25, at 3.

Defendants not produced varying versions (i.e., redacted based on attorney-client privilege and then fully unredacted) of the same documentation over the course of discovery in piecemeal fashion.[10]  See Pl.'s Reply ISO Mot. Compel, Dkt. 29, at 4 ("Defendants' repeated assertions that Plaintiff's counsel failed to depose witnesses or conduct discovery is disingenuous given the large number of late produced and withheld documents. . . .  Further, Plaintiff cannot depose the remaining witnesses until the relevant discovery is produced.").  For example, Defendants previously asserted attorney-client privilege in redacting portions of Fabricius' handwritten notes but then seemingly waived that privilege when they provided the unredacted versions of the same notes before Fabricius' deposition and right before the close of discovery.  See Ex. C, Casperson Decl., Dkt. 25-4.

Although Defendants admit that "certain attorney-client documents have been intentionally disclosed during litigation," they contend that "these disclosures do not function as a blanket waiver of attorney-client and work product privileges."  Defs.' Response Mot. Compel, Dkt. 26, at 18.  However, "[t]he Ninth Circuit has held that a defendant claiming to have relied upon the advice of counsel cannot selectively waive the attorney-client privilege with respect to communications that tend to show that he relied upon advice of counsel while simultaneously refusing to disclose other communications pertaining to the same subject."  United States v. W.R. Grace, 439 F. Supp. 2d 1125, 1144 (D. Mont. 2006) (citing United States v. Ortland, 109 F.3d 539, 543 (9th Cir. 1997)).

Defendants also argue that "work product and communications that have not been produced to the client, and thus could not have informed the client's decision-making, are not discoverable . . ."  Defs.' Response Mot. Compel, Dkt. 26, at 19.  But numerous courts have found that "the defendant, 'having waived the privilege by asserting the advice of counsel defense, must produce not only attorney-client

---

[10] It is worth noting that Defendants provided 24 supplemental responses to Plaintiff's First Set of Interrogatories, Requests for Admission, and Requests for Production of Documents.  See Stoll Decl., Dkt. 26-1 ¶ 3.

1   communications but also <u>all documents relied upon or considered by counsel in</u>

2   <u>rendering the opinions relied upon</u>.'"   <u>In re Fresh and Process Potatoes</u>, 2014 WL

3   1413676, at *5–6 (quoting <u>Aspex Eyeware</u>, 276 F. Supp. 2d at 1092–93) ("It would be

4   patently unfair for a party to assert that they relied upon the advice of counsel, yet

5   deprive the opponent of the opportunity to understand why the advice was given, what

6   other alternatives were looked at, why certain advice was rejected, and how the advice

7   was interrelated to other [] decisions.").

8        Even assuming they waived attorney-client privilege and the work product

9   doctrine, Defendants argue that "there is nothing to compel with regard to" their advice of

10  counsel defenses because "[o]n February 16, 2022, prior to the filing of the Motion to

11  Compel, [they] produced all e-mail communications between Ms. Fabricius and Jill

12  Holinka and Lynden Nguyen, for the dates of December 2017 through November 2018,"

13  as well as "all billing records received by [FSD] from MSBT [] for the same time period."

14  Defs.' Response Mot. Compel, Dkt. 26, at 19–20.  However, the Court agrees with

15  Plaintiff that there appear to be discrepancies in the information produced.  <u>See</u> Pl.'s

16  Reply ISO Mot. Compel, Dkt. 29, at 8.  For example, attorney Holinka states in her

17  declaration that, "as [she] communicated with Ms. Fabricius regarding multiple issues

18  related to [FSD] in any given week, [she] did not regularly take notes of [her]

19  conversations with Ms. Fabricius, or otherwise document the legal advice [she] provided

20  to her." Ex. J, Holinka Decl., Dkt. 26-42 ¶ 4.  However, attorney Holinka produced

21  detailed notes of her conversations with Fabricius beginning in October 2018,

22  suggesting that notes from the months prior may exist.  <u>See</u> Ex. M, Casperson Decl.,

23  Dkt. 25-14 (consisting of 34 pages of handwritten notes).  Furthermore, Plaintiff

24  expresses the following:

25        Both Fabricius and Holinka claim that they discussed the
       allegations that Fitch was engaged in inappropriate sexual
26     relationships with students, staff, or others on January 29,
       2018, but no notes from Holinka relat[ing] to [this] ½ hour
27     meeting have been produced, in spite of Fabricius' claim of
       extensive reporting of information.   Dkt. 28-1 at 10–11;
28     Casperson Reply Decl., ¶ 12, Ex. 5.   Both Fabricius and

Holinka repeat that they had discussions on April 12, 13, and April 16, May 7, and August 3, 2018, but neither Holinka or Fabricius have produced Holinka's notes for those days, and MSBT claims the notes that exist do not include sexual allegations related to Fitch. Dkts. 28-1 at 11–13; 26-42 at 3–11; 25-14 at 1. Fabricius ignores the telephone conversations she had with Holinka on October 16 and 19th, confirmed in Holinka's notes, and claims a detailed conversation happened on October 22, 2018, for which no notes from Holinka have been produced. Dkts. 28-1 at 13–17; 26-42 at 7–10; 25-14 at 2–3. . . . Further, many of MSBT's billing records do not reflect any events and certainly not the detailed discussions represented by Fabricius. Casperson Decl., ¶ 12, Ex. 5. Further, the October 22, 2018, billing records reflect unproduced emails by MSBT and Defendants. Casperson Decl., ¶¶ 11–12, Ex. 4 & 5. Finally, Defendants' production was after discovery closed.

Pl.'s Reply ISO Mot. Compel, Dkt. 29, at 8.

In light of the above, Defendants' piecemeal provision of the same documentation (e.g., Fabricius' notes), and the production of communications and billing records after the close of discovery, the Court agrees with Plaintiff that there are likely notes and communications still missing. See id. ("Defendants cannot reasonably expect to testify regarding alleged communications and then refuse to produce notes or emails that do exist for those dates, particularly where they are referenced in the billing records but not produced by MSBT, suggesting those entries had nothing to do with Fitch."). Accordingly, Plaintiff's Motion to Compel is GRANTED to the extent it seeks information related to Defendants' advice of counsel defenses based on their decisions not to investigate Fitch when misconduct was reported and after learning ISP was investigating him for sexual misconduct.[11] See Pl.'s Mot. Compel, Dkt. 25, at 18–19. This includes any "contemporaneous notes, if they exist . . ." Id. at 4. Because Defendants are not pursuing an advice of counsel defense as to their decision to move Plaintiff's desk into the computer lab, Plaintiff's Motion to Compel related information is DENIED.

///

---

[11] Plaintiff alternatively argues that "Defendants' limited production, after depositions were taken, should result in a waiver of its affirmative defenses." Pl.'s Mot. Compel, Dkt. 25, at 9; see also Pl.'s Reply ISO Mot. Compel, Dkt. 29, at 8–9. The Court will not strike these advice of counsel defenses at this time, but Defendants are warned that failure to comply with this Memorandum and Order may result in such a sanction.

Defendants are advised against asserting new advice of counsel defenses in this case without providing all of the appropriate documentation and information.

### 2. Attorney-Client Communications Unrelated to Advice of Counsel Defenses and Recordings with Board Members and Administrative Staff

According to Plaintiff, Defendants have produced the following information and documentation unrelated to their advice of counsel defenses:

> [I]nformation provided by Fabricius to Brian Julian, James Stoll, and Andrea Fontaine at AJH (Casperson Decl., ¶ 13, Ex. G, i.e., p. 21); emails between Fabricius and Brian Julian, James Stoll, or Andrea Fontaine (Casperson Decl., ¶ 13, Ex. G, i.e., p. 8–9, 11, 45–47); letters to ICRMP (Casperson Decl., ¶ 14, Ex. H); witness recordings (Casperson Decl., ¶¶ 22–28, Ex. N–T); emails between Fabricius and ICRMP (Casperson Decl., ¶ 13, Ex. G, i.e., p. 69); emails between Fabricius and Moreton & Co (Casperson Decl., ¶ 13, Ex. G, i.e., p. 79); emails between [attorney Eberharter-Maki] and Fabricius (not produced previously) (Casperson Decl., ¶ 13, Ex. G, i.e., p. 96); and emails between Fabricius and Holinka (not produced previously) (Casperson Decl., ¶ 13, Ex. G, i.e., p. 102). Defendants also produced other attorney-client communications unrelated to Plaintiff's case.

Pl.'s Mot. Compel, Dkt. 25, at 16, 17 ("The topics of the recording[s] touch on nearly every aspect of the case."); see also Casperson Decl., Dkt. 25-1 ¶ 13 ("Defendant[s] intentionally produced likely more than 1000 pages of attorney client privileged communications over the course of discovery.").  Regarding Defendants' investigations of Fitch, Plaintiff provides the following:

> Plaintiff requested that Defendants produce any related emails with counsel from January 2018 through November 2018, the time period [Fabricius] claimed she was obtaining advice not to investigate.  Casperson Decl., ¶ 15.  Because Fabricius' notes include reference to an email to Holinka in April 2018, Plaintiff believes relevant information has not been produced. The fact that there are no discussions with MSBT or any other legal counsel during this timeframe, along with the complete absence of confirming notes from MSBT, cements that Fabricius' decision not to investigate was her own, not one by legal counsel.
>
> . . .
>
> Though Defendants were made aware of Fitch's harassment of Plaintiff and his sexual misconduct with students well prior, Defendants worked with MBST to engage [attorney

12

1
2
3
4
5
6
7
8

Eberharter-Maki] to investigate both issues in November and December 2018. Casperson Decl., ¶ 6, Ex. C. Defendants only produced limited portions of [attorney Eberharter-Maki's] files, though they assert they acted reasonably in investigating Fitch. Plaintiff had to subpoena the entire file from [attorney Eberharter-Maki] to obtain the full investigations. Casperson Decl., ¶ 33, Ex. Y. Only after obtaining the full file did Plaintiff see that [attorney Eberharter-Maki's] initial draft of her investigation of Fitch's conduct had facts regarding Defendants' notice removed and that [attorney Eberharter-Maki] had requested a timeline from Fabricius on November 24, 2018. Casperson Decl., ¶ 34, Ex. Z (Draft Fitch report, [attorney Eberharter-Maki] Notes, Final Fitch Investigation). Presumably, the initial facts were based on Fabricius' timeline.

9  Pl.'s Mot. Compel, Dkt. 25, at 16–17.

10      To the extent Defendants reassert their argument that Plaintiff never served

11  formal requests for this information, it fails for the same reasons discussed above. See

12  supra Part A.1. Like the documentation related to their advice of counsel defenses,

13  Defendants have produced expansive disclosures of privileged information. Defendants

14  initially asserted attorney-client privilege and work product protection only to later provide

15  that same documentation in unredacted form, mostly towards the tail-end of discovery

16  and even after discovery closed.

17      As "the party seeking to withhold documents from discovery on the basis of

18  attorney-client privilege and work product," Defendants have "the burden of proving that

19  those doctrines apply to the documents in question." KeyBank, 2015 WL 13841480, at

20  *3. Here, Defendants have not provided any explanation as to why those privileges are

21  applicable to any outstanding documentation not produced. Defendants cannot produce

22  privileged information on one subject but then assert a blanket privilege to withhold other

23  information regarding that same subject without explaining what that information is and

24  why it is privileged. Because Defendants have failed to meet their burden, Plaintiff's

25  Motion to Compel is GRANTED as to attorney-client communications and work product

26  unrelated to their advice of counsel defenses, their investigations of Fitch, and their

27  recordings. See Pl.'s Mot. Compel, Dkt. 25, at 19–20.

28  ///

### 3.   Privilege Logs

Rule 26(b)(5)(A) provides the following:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

"[B]oilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct. for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005).

Here, Defendants' privilege logs only provide the bates numbers and privilege asserted. See Ex. B, Casperson Decl., Dkt. 25-3. As a result, neither Plaintiff nor this Court can adequately determine whether the asserted privileges foreclose disclosure of documentation, especially since Defendants have not provided any additional or adequate explanations to demonstrate that the privileges are even applicable to unproduced documentation. See Pl.'s Mot. Compel, Dkt 25, at 18 ("Plaintiff does not know what communications and work product exist because Defendants have not provided a privilege log for the litigation period."). Accordingly, regarding any non-produced materials, Defendants are required to provide a privilege log in accordance with Rule 26(b)(5)(A).[12]

///

///

---

[12] Plaintiff further asserts that attorney Holinka was never disclosed as a witness. See Pl.'s Mot. Compel, Dkt. 25, at 13; but see Defs.' Response Mot. Compel, Dkt. 26, at 12–13 (stating that attorney Holinka was identified multiple times in Fabricius' notes and deposition testimony, but Plaintiff never formally requested communications from attorney Holinka). Regardless, in addition to Defendants providing some communications and notes from attorney Holinka, the parties' counsel agreed that Plaintiff could depose attorney Holinka, in addition to attorneys Eberharter-Maki, Fontaine, and Julian, after the close of discovery. See Casperson Reply Decl., Dkt. 29-1 ¶ 8.

14

1

2    **B.    Plaintiff's Motions to Strike and Motions in Limine**

       Plaintiff also moves to strike the declarations of Michael R. Williams (Dkt. 26-40),

3    Marci Haro (Dkt. 26-43), Fabricius (Dkt. 26-43), and attorney Holinka (Dkt. 26-42).  See

4    Dkt. 32–34.  Because the Court need not consider the contested portions of those

5    declarations in reaching its decision on the Motion to Compel, Plaintiff's Motions to Strike

6    are DENIED as moot.  See Gonzales v. City of San Jose, No. 5:13-cv-00695-BLF, 2015

7    WL 632320, at *3 & n.14 (N.D. Cal. Feb. 13, 2015) (collecting cases).

8        Plaintiff also moves to bar Williams and Haro from testifying at the trial of this

9    matter.  See Dkt. 32–33.  "However, generally, ruling on motions in limine 'should be

10   deferred until shortly before trial to ensure that the evidence may be weighed in proper

11   context.'"  Carbajal v. Hayes Mgmt. Serv., Inc., No. 4:19-cv-00287-BLW, 2021 WL

12   2711465, at *1 (D. Idaho July 1, 2021) (quoting Bratton v. Shinette, No. 2:16-cv-1084-

13   EFB-P, 2018 WL 4929736, at *5 (E.D. Cal. Oct. 11, 2018)).  Because discovery will need

14   to be reopened, no dispositive motions have been filed, and trial is not imminent, the

15   Court finds Plaintiff's Motions in Limine are premature.  Accordingly, those Motions are

16   DENIED without prejudice.

17   **C.    Defendants' Motion to Strike Expert Report of Lindy Aldrich, Esq.**

18      Lastly, Defendants move to strike the expert report of Lindy Aldrich, Esq.,

19   attached to the Declaration of attorney Casperson in support of Plaintiff's Reply to the

20   Motion to Compel.  Defs.' Mot. Strike, Dkt. 37; see also Ex. 3, Casperson Reply Decl.,

21   Dkt. 29-4, at 4–21 (providing expert opinion on whether FSD "met the appropriate

22   standard of care consistent with its obligations under Title IX").  Defendants seek to

23   "strike those aspects of Ms. Aldrich's legal expert testimony which purported to define

24   the governing law, and applied the purported governing law to unsupported facts, in

25   reaching improper legal conclusions and prohibit Ms. Aldrich from testifying consistent

26   therewith at trial."  Defs.' Mem. ISO Mot. Strike, Dkt. 37-1, at 2.  However, the Court did

27   not rely on this expert report in reaching a decision on any of the aforementioned

28   motions.  Furthermore, like Plaintiff's Motions in Limine, the Court finds it would be

premature to decide at this time whether this expert report should be stricken from the record and not considered for the purposes of summary judgment and trial.  See supra Part B.  Therefore, Defendants' Motion is DENIED without prejudice.

**CONCLUSION**

Based on the foregoing, the Court orders as follows:

1.  Plaintiff's Motion to Compel, Dkt. 25, is GRANTED in part and DENIED in part. Plaintiff's Motion to Compel documentation and information related to Defendants' advice of counsel defense regarding the decision to move Plaintiff's desk into the computer lab is DENIED.  Otherwise, Defendants must provide the following documentation and information (see id., at 18–20):

> A.  Advice of Counsel Defenses:
>
> > (1)  All communications, evidence provided or discussed, and work product that discusses, analyzes, or addresses any legal counsel giving Defendants advice about investigating Fitch, including any document discussing or identifying information provided by Defendants for the purposes of such opinions; and
> >
> > (2)  All communications, evidence provided or discussed, and work product that discusses, analyzes, or addresses any legal counsel giving Defendants advice about delaying an investigation into Fitch's conduct after learning of the ISP investigation, including any benefits of delaying until the ISP investigation was completed, why ISP's direction to do what they needed to do was not sufficient, and when and what advice was given relating to when the investigation would be initiated.
>
> B.  Emails, Letters, Client Information:
>
> > (1)  All opinions, analysis, or communications with ICRMP;
> >
> > (2)  All attorney-client communications related to the facts of the case (due to the broad scope of the topics); and
> >
> > (3)  All work product that analyzes the facts of the case.

///

///

16

C.  Defendants' Investigations of Fitch:

(1)    All attorney-client communications related to both investigations and the follow-up decisions related to both Fitch and Plaintiff, including from MSBT, EEM, AJH, or ICRMP;

(2)    All work product analyzing either investigation of Fitch, including from MSBT, EEM, AJH or ICRMP; and

(3)    All evidence gathered or discovered related to the investigations of Fitch.

D.  Recordings:

(1)  All attorney-client communications;

(2)  All evidence provided by Defendants to legal counsel for purposes of preparing for the recordings, including any identification of student or staff Fitch may have been involved with, other reports, etc.; and

(3)  All work product related to the recordings, including any notes of prior discussions, outlines of questions, documents used to prepare or upon which were relied, any analysis or opinions expressed related to the topics asked during interviews.

2.  Defendants must also provide an adequate privilege log for their entire file in accordance with Rule 26(b)(5)(A).

3.  Defendants' Motion to Seal Exhibit L to the Stoll Declaration in support of their Response to Plaintiff's Motion to Compel, Dkt. 27, is GRANTED.

4.  Plaintiff's Motion to Seal Exhibit 4 to the Casperson Declaration in support of Plaintiff's Reply to the Motion to Compel, Dkt. 30, is GRANTED.

5.  Plaintiff's Motions to Strike the Declarations of Williams, Haro, Fabricius, and attorney Holinka (Dkt. 32, 33, 34) are DENIED as moot.  The derivative Motions in Limine as to Williams and Haro (Dkt. 32, 33) are DENIED without prejudice.

6.  Defendants' Motion to Strike the Expert Report of Lindy Aldrich, Esq., (Dkt. 37) is DENIED without prejudice.

///

///

///

7.  Because the Scheduling Order will need to be modified, the parties are directed to file a stipulation or motion for a modified discovery plan and scheduling order not later than thirty (30) days from the date this Memorandum and Order is electronically filed.

IT IS SO ORDERED.


Dated:  April 5, 2023

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE